# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# WACO DIVISION

| | |
|---|---|
| Neo Wireless LLC,<br><br>        Plaintiff,<br><br>v.<br><br>Dell Technologies Inc. and Dell Inc.,<br><br>        Defendant. | CIVIL ACTION NO. 6:21-cv-0024<br><br>JURY TRIAL DEMANDED |

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff Neo Wireless LLC ("Plaintiff" or "Neo Wireless") files this Original Complaint against Defendants Dell Technologies Inc. and Dell Inc. (collectively "Defendants" or "Dell") for patent infringement under 35 U.S.C. § 271. Plaintiff alleges, based on its own personal knowledge with respect to its own actions and based upon information and belief with respect to all others' actions, as follows:

## THE PARTIES

1. Plaintiff Neo Wireless LLC is a Delaware corporation with its principal place of business located in Wayne, Pennsylvania.

2. On information and belief, Defendant Dell Technologies Inc. is a company duly organized and existing under the laws of the State of Delaware, with its principal place of business at One Dell Way, Round Rock, Texas 78682. Dell Technologies, Inc. may be served through its registered agent, Corporation Service Company, at 251 Little Falls Drive, Wilmington, Delaware 19808.

3. On information and belief, Defendant Dell Inc. is a company duly organized and existing under the laws of the State of Delaware, with its principal place of

1

business at One Dell Way, Round Rock, Texas 78682. Dell Inc. may be served through its registered agent, Corporation Service Company, at 211 E. 7th Street, Suite 620, Austin, Texas 78701.

## JURISDICTION AND VENUE

4. This action includes a claim of patent infringement arising under the patent laws of the United States, 35 U.S.C. §§ 1 *et seq*. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

5. This Court has personal jurisdiction over Dell. As indicated above, Dell's principal place of business is located within this District. Moreover, Dell conducts business and has committed acts of patent infringement and has induced and contributed to acts of patent infringement by others in this District, the State of Texas, and elsewhere in the United States. Dell, directly and through subsidiaries or intermediaries, has committed and continues to commit acts of infringement in this District by, among other things, designing, developing, manufacturing, importing, offering to sell, and selling products that infringe the asserted patents.

6. Venue is proper in this judicial district per 28 U.S.C. §§ 1391 and 1400(b).

7. Dell has committed acts of infringement in this judicial district and maintains regular and established places of business in this district, including its global corporate headquarters at One Dell Way, Round Rock, Texas 78682 and as set forth above, either directly or through its subsidiaries and affiliates. Dell has continuous and systematic business contacts with the State of Texas. Dell, directly or through subsidiaries or intermediaries (including distributors, retailers, contract manufacturers, and others), conducts its business extensively throughout Texas, by developing,

designing, shipping, manufacturing, distributing, offering for sale, selling, and advertising (including the provision of interactive web pages) its products and services in the State of Texas and the Western District of Texas. Dell has purposefully and voluntarily placed its infringing products and services into this District and into the stream of commerce with the intention and expectation that they will be purchased and used by consumers in this District.

8.      In addition to its global corporate headquarters, as indicated above, Dell owns and operates numerous locations within this District including locations at 1404 Park Center Drive, Austin, Texas 78754; 701 E. Parmer Lane, Austin, Texas 78753 (Bldgs PS2, PS3, wand PS3B); 12500 Tech Ridge Boulevard, Bldg PS4, Austin, Texas 78753; 9715 Burnet Road, Austin, Texas 78758; 4309 Emma Browning Avenue, Austin, Texas 78719; 9830 Colonnade Boulevard, San Antonio, Texas 78230; and 5822 Cromo Drive, El Paso, Texas 79912.

9.      On information and belief, Dell, among others, designs, develops, manufactures, sells, and offers for sale infringing products in this District. For example, Dell recently published various job postings in Austin involving the implementation of LTE technology including, Senior RF Services Consultant, Open RAN Senior Expert Developer, NSX Staff Systems Engineer, and Director of Core Network Design and Optimization Services. Similarly, Dell recently published various job postings in Austin involving the implementation of 5G technology including, Communications Consultant for (5G) Telecom Systems, Network Architect, Director of Core Network Design and Optimization Services, Telco Partner Business Development Manager, Network Architect Director, Engineering Technologies, NSX Staff Systems Engineer, and Edge Product Manager, among others.

## ASSERTED PATENTS

10.     On June 18, 2013, the United States Patent and Trademark Office duly and

legally issued U.S. Patent No. 8,467,366 ("the '366 patent"), entitled "Methods and Apparatus for Random Access in Multi-Carrier Communication Systems." A copy of the '366 patent is attached as Exhibit A.

11. The '366 patent issued from U.S. Patent Application 13/205,579, which was assigned from the inventors to Waltical Solutions, Inc. on April 8, 2005. The application was later assigned from Waltical Solutions, Inc. to Neocific, Inc. on December 14, 2005. The now-issued '366 patent was assigned from Neocific, Inc. to CFIP NCF LLC on November 22, 2019 before it was assigned to Neo Wireless LLC on January 23, 2020.

12. The '366 patent is valid and enforceable.

13. On June 7, 2016, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 9,363,066 ("the '066 patent"), entitled "Method and Apparatus for Flexible Use of Frequency Bands." A copy of the '066 patent is attached as Exhibit B.

14. The '066 patent issued from U.S. Patent Application 14/041,495, which was assigned from the inventors to Neocific, Inc. on February 2, 2012. The now-issued '066 patent was later assigned from Neocific, Inc. to CFIP NCF LLC on November 22, 2019 before it was assigned to Neo Wireless LLC on January 23, 2020.

15. The '066 patent is valid and enforceable.

16. On April 17, 2018, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 9,948,908 ("the '908 patent"), entitled "Channel Probing Signal for a Broadband Communication System." A copy of the '908 patent is attached as Exhibit C.

17. The '908 patent issued from U.S. Patent Application 14/321,615, which was filed by Neo Wireless LLC on behalf of the inventors.

18. The '908 patent is valid and enforceable.

19. On September 11, 2018, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 10,075,941 ("the '941 patent"), entitled "Methods and Apparatus for Multi-Carrier Communications With Adaptive Transmission and Feedback." A copy of the '941 patent is attached as Exhibit D.

20. The '941 patent issued from U.S. Patent Application 15/082,878, which was assigned from the inventors to Waltical Solutions, Inc. on April 8, 2005. The application was later assigned from Waltical Solutions, Inc. to Neocific, Inc. on December 14, 2005. The now-issued '941 patent was assigned from Neocific, Inc. to CFIP NCF LLC on November 22, 2019 before it was assigned to Neo Wireless LLC on January 23, 2020.

21. The '941 patent is valid and enforceable.

22. On October 15, 2019, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 10,447,450 ("the '450 patent"), entitled "Method and System for Multi-Carrier Packet Communication with Reduced Overhead." A copy of the '450 patent is attached as Exhibit E.

23. The '450 patent issued from U.S. Patent Application 15/676,421, which was assigned from the inventors to Neocific, Inc. on October 2, 2007. The now-issued '450 patent was later assigned from Neocific, Inc. to CFIP NCF LLC on November 22, 2019 before it was assigned to Neo Wireless LLC on January 23, 2020.

24. The '450 patent is valid and enforceable.

25. Neo Wireless owns all rights, title, and interest in and to each of the '366, '066, '908, '941, and '450 patents (the "patents-in-suit") and possesses all rights

of recovery.

## FACTUAL ALLEGATIONS

26. Inventor Xiaodong (Alex) Li, Ph.D. founded Neocific Inc. in the early 2000s to design, develop, and implement a new wireless communication system. He and his co-inventors had extensive experience with wireless communications systems, including the development of the Wi-Max standards, and a deep understanding of the flaws in existing systems at the time. The inventors saw an opportunity to create a new wireless communication system meant to address those flaws while incorporating cutting-edge Orthogonal Frequency-Division Multiple Access (OFDMA) based technologies, and, starting in the 2004-2005 timeframe, they filed patents on the work.

27. Dr. Li served as the President and Founder of Neocific. Dr. Li obtained his Ph.D. in electrical engineering from the University of Washington, his M.S. from Shanghai Jiao Tong University, and his B.S. from Tsinghua University. Dr. Li has authored more than 30 journal and conference papers in wireless communications, video coding, and networking. He has been granted more than 100 U.S. and foreign patents.

28. Dr. Titus Lo, Ph.D. is a founding employee of Neocific. Dr. Lo obtained his Ph.D. in electrical engineering from McMaster University and his B.S. from the University of British Columbia. Dr. Lo has authored more than 30 technical papers in international peer-reviewed journals and presented more than 50 time at industry events. He has been granted more than 100 U.S. and foreign patents.

29. Neo Wireless owns all substantial right, title, and interest in the patents-in-suit, and holds the right to sue and recover damages for infringement thereof.

30. David Loo is the CEO of Plaintiff Neo Wireless. Mr. Loo works and resides in Wayne, Pennsylvania. Mr. Loo has over a decade of experience as a licensing executive and patent attorney with a well-established track record of assisting companies,

inventors and patent holders to ensure they are fairly compensated for their inventions.

31. The wireless communication industry has been developing rapidly since Bell Labs developed the First Generation of modern commercial cellular technology in 1984. Multiple wireless communication technologies designated by generations emerged and brought new capacities to people all over the world. In 2008, 3GPP created and finalized the LTE standards as an upgrade to 3G. The cellular industry recognized its major benefits, and virtually all cellular device manufacturers, including Dell have embraced LTE as the next generation of commercial cellular technology and developed phones and other cellular devices to utilize the 4G LTE technology.

32. Dell is a leading international technology provider headquartered in Austin, Texas.  It is one of the world's largest end-to-end technology provider, consumer electronics maker, and information hardware, software, and service solutions supplier. Dell is one of the world's leading suppliers of personal computers. Dell's most famous and successful PC line is the Latitude series, which is sold throughout the United States.

33. Dell has been a leader in the PC industry by adopting the most advanced communication capabilities, including cellular capabilities. In 2011, Dell launched the Latitude E6420 XFR, which was compatible with the Dell Wireless 5800 LTE/4G Mobile Broadband Mini-Card (WRYPD) v.2.02.16.003.2, A00 that launched in August 2011. After that, each generation of the Latitude series has been designed to have LTE or 4G and 5G cellular capabilities.

34. To use LTE or 4G and 5G networks, the Dell Latitude products are manufactured to comply with wireless standards, such as the 3GPP standards, that ensure compatibility of wireless devices and wireless networks.

35. Dell has been on notice of the asserted patents since at least the filing and/or service of this Complaint. Dell has known that the acts complained of below constituted infringement of the asserted patents, or at least subjectively believed there was a high probability of infringement of the asserted patents but took deliberate steps to

avoid confirming the same.

36. As described above, the asserted patents read on portions of the LTE or 4G and 5G standards, which Dell implements in its products ("Dell's Accused Instrumentalities"), such as its Latitude laptops, such as the Latitude 3510, Latitude 5310, 3190; tablets, such as the Latitude 7220EX Rugged Extreme Tablet, Latitude 7220 Rugged Extreme Tablet, and other cellular-capable devices Dell makes, uses, sells, offers to sell and/or imports these Accused Instrumentalities in the United States. Accordingly, Dell directly and indirectly infringes each of the patents-in-suit.

37. Dell does not have any rights to the patents-in-suit.

38. In the interest of providing detailed averments of infringement, Neo Wireless has identified below at least one claim per patent to demonstrate infringement. However, the selection of claims should not be considered limiting, and additional claims of the patents-in-suit (including method, system, and apparatus claims) that are infringed by Defendant Dell will be disclosed in compliance with the Court's rules related to infringement contentions.

### COUNT ONE: INFRINGEMENT OF THE '366 PATENT

39. Neo Wireless incorporates by reference the preceding paragraphs as if fully set forth herein.

40. As described above, Dell has infringed and continues to infringe the patents-in-suit by implementing certain cellular standards, including particular 3GPP standards, in its products.

41. Dell directly infringes the '366 patent because it has made, used, sold, offered to sell and/or imported its respective Accused Instrumentalities in the United States. For example, each of Dell's Accused Instrumentalities implements the portions of the 3GPP LTE standard specification that read on at least claim 1 the '366 patent. *See*

Exhibit F.

42. Dell's Accused Instrumentalities meet at least one claim of the '366 patent.

43. Dell makes, uses, offers to sell, sells, and imports Dell's Accused Instrumentalities within the United States or into the United States without authority from Neo Wireless.

44. Dell therefore infringes the '366 patent under 35 U.S.C. § 271(a).

45. Dell indirectly infringes the '366 patent by inducing infringement by others, such as end-user customers, by, for example, encouraging its users to take advantage of LTE features within the United States and by implementing the standardized features in its cellular-capable devices.

46. Dell took the above actions intending to cause infringing acts by others.

47. Dell received actual notice of its infringement of the '366 patent at least as early as the date of service of this Complaint. Therefore, Dell was or is now aware of the '366 patent or has willfully blinded itself as to the existence of the '366 patent and made, used, sold, offered to sell, imported and/or encouraged the making, using, selling, offering to sell, or importing of the Accused Products despite knowing of an objectively high likelihood that its actions constituted infringement of the '366 patent at all times relevant to this suit. Alternatively, Dell subjectively believed there was a high probability that others would infringe the '366 patent but took deliberate steps to avoid confirming that it was actively inducing infringement by others. Dell therefore infringes the patents-in-suit under 35 U.S.C. § 271(b).

48. Dell indirectly infringes the '366 patent by contributing to infringement by others, such as end-user customers by offering to sell and selling within the United States

components (that is, Dell's Accused Instrumentalities) that constitute a material part of the inventions claimed in the '366 patent, and that are used to practice one or more processes/methods covered by the claims of the '366 patent. Dell's end-user customers directly infringe the '366 patent by, for example, using the cellular functionality of Dell's Accused Instrumentalities, including establishing communication with the cellular wireless network and contending for access to resources on the network.

49.     In offering to sell and selling the components specified above, Dell has known these components to be especially made or especially adapted for use in an infringement of the '366 patent and that these components are not a staple article or commodity of commerce suitable for substantial non-infringing use. Alternatively, Dell subjectively believed there was a high probability that these components to be especially made or especially adapted for use in an infringement of the '366 patent and that these components are not a staple article or commodity of commerce suitable for substantial non-infringing use, but took deliberate steps to avoid confirming the same. Dell therefore infringes the '366 patent under 35 U.S.C. § 271(c).

50.     To the extent that Dell releases any new version of Dell's Accused Instrumentalities, such instrumentalities will meet the claims of the '366 patent and infringe under 35 U.S.C. § 271(a)-(c) in ways analogous to Dell's current infringement described above.

51.     Neo Wireless has been damaged and continues to be damaged by Dell's infringement of the 366 patent.

### COUNT TWO: INFRINGEMENT OF THE '066 PATENT

52.     Neo Wireless incorporates by reference the preceding paragraphs as if fully set forth herein.

53. As described above, Dell has infringed and continues to infringe the patents-in-suit by implementing certain cellular standards, including particular 3GPP standards, in its products.

54. Dell directly infringes the '066 patent because it has made, used, sold, offered to sell and/or imported its respective Accused Instrumentalities in the United States. For example, each of Dell's Accused Instrumentalities implements the portions of the 3GPP LTE standard specification that reads on at least claim 6 the '066 patent. *See* Exhibit G.

55. Dell's Accused Instrumentalities meet at least one claim of the '066 patent.

56. Dell makes, uses, offers to sell, sells, and imports Dell's Accused Instrumentalities within the United States or into the United States without authority from Neo Wireless.

57. Dell therefore infringes the '066 patent under 35 U.S.C. § 271(a).

58. Dell indirectly infringes the '066 patent by inducing infringement by others, such as end-user customers, by, for example, encouraging its users to take advantage of LTE features within the United States and by implementing the standardized features in its cellular-capable devices.

59. Dell took the above actions intending to cause infringing acts by others.

60. Dell received actual notice of its infringement of the '066 patent at least as early as the date of service of Complaint. Therefore, Dell was or is now aware of the '066 patent or has willfully blinded itself as to the existence of the '066 patent and made, used, sold, offered to sell, imported and/or encouraged the making, using, selling, offering to sell, or importing of the Accused Products despite knowing of an objectively high likelihood that its actions constituted infringement of the '066 Patent at all times relevant to this suit. Alternatively, Dell subjectively believed there was a high probability that others would infringe the '066 patent but took deliberate steps to avoid confirming that it

11

was actively inducing infringement by others. Dell therefore infringes the '066 patent under 35 U.S.C. § 271(b).

61. Dell indirectly infringes the '066 patent by contributing to infringement by others, such as end-user customers by offering to sell and selling within the United States components (that is, Dell's Accused Instrumentalities) that constitute a material part of the inventions claimed in the '066 patent, and that are used to practice one or more processes/methods covered by the claims of the '066 patent. Dell's end-user customers directly infringe the '066 patent by, for example, using the cellular functionality of Dell's Accused Instrumentalities, including establishing communication with the cellular wireless network and contending for access to resources on the network.

62. In offering to sell and selling the components specified above, Dell has known these components to be especially made or especially adapted for use in an infringement of the '066 patent and that these components are not a staple article or commodity of commerce suitable for substantial non-infringing use. Alternatively, Dell subjectively believed there was a high probability that these components to be especially made or especially adapted for use in an infringement of the '066 patent and that these components are not a staple article or commodity of commerce suitable for substantial non-infringing use, but took deliberate steps to avoid confirming the same. Dell therefore infringes the '066 patent under 35 U.S.C. § 271(c).

63. To the extent that Dell releases any new version of Dell's Accused Instrumentalities, such instrumentalities will meet the claims of the '066 patent and infringe under 35 U.S.C. § 271(a)-(c) in ways analogous to Dell's current infringement described above.

64. Neo Wireless has been damaged and continues to be damaged by Dell's infringement of the '066 patent.

## COUNT THREE: INFRINGEMENT OF THE '908 PATENT

65. Neo Wireless incorporates by reference the preceding paragraphs as if fully set forth herein.

66. As described above, Dell has infringed and continues to infringe the patents-in-suit by implementing certain cellular standards, including particular 3GPP standards, in its products.

67. Dell directly infringes the '908 patent because it has made, used, sold, offered to sell and/or imported its respective Accused Instrumentalities in the United States. For example, each of Dell's Accused Instrumentalities implements the portions of the 3GPP LTE standard specification that read on at least claim 11 the '908 patent. *See* Exhibit H.

68. Dell's Accused Instrumentalities meet at least one claim of the '908 patent.

69. Dell makes, uses, offers to sell, sells, and imports Dell's Accused Instrumentalities within the United States or into the United States without authority from Neo Wireless.

70. Dell therefore infringes the '908 patent under 35 U.S.C. § 271(a).

71. Dell indirectly infringes the '908 patent by inducing infringement by others, such as end-user customers, by, for example, encouraging its users to take advantage of LTE features within the United States and by implementing the standardized features in its cellular-capable devices.

72. Dell took the above actions intending to cause infringing acts by others.

73. Dell received actual notice of its infringement of the '908 patent at least as early as the date of service of Complaint. Therefore, Dell was or is now aware of the '908 patent or has willfully blinded itself as to the existence of the '908 patent and made, used, sold, offered to sell, imported and/or encouraged the making, using, selling, offering to

sell, or importing of the Accused Products despite knowing of an objectively high likelihood that its actions constituted infringement of the '908 patent at all times relevant to this suit. Alternatively, Dell subjectively believed there was a high probability that others would infringe the '908 patent but took deliberate steps to avoid confirming that it was actively inducing infringement by others. Dell therefore infringes the patents-in-suit under 35 U.S.C. § 271(b).

74. Dell indirectly infringes the '908 patent by contributing to infringement by others, such as end-user customers by offering to sell and selling within the United States components (that is, Dell's Accused Instrumentalities) that constitute a material part of the inventions claimed in the '908 patent, and that are used to practice one or more processes/methods covered by the claims of the '908 patent. Dell's end-user customers directly infringe the '908 patent by, for example, using the cellular functionality of Dell's Accused Instrumentalities, including establishing communication with the cellular wireless network and contending for access to resources on the network.

75. In offering to sell and selling the components specified above, Dell has known these components to be especially made or especially adapted for use in an infringement of the '908 patent and that these components are not a staple article or commodity of commerce suitable for substantial non-infringing use. Alternatively, Dell subjectively believed there was a high probability that these components to be especially made or especially adapted for use in an infringement of the '908 patent and that these components are not a staple article or commodity of commerce suitable for substantial non-infringing use, but took deliberate steps to avoid confirming the same. Dell therefore infringes the '908 patent under 35 U.S.C. § 271(c).

76. To the extent that Dell releases any new version of Dell's Accused

Instrumentalities, such instrumentalities will meet the claims of the '908 patent and infringe under 35 U.S.C. § 271(a)-(c) in ways analogous to Dell's current infringement described above.

77. Neo Wireless has been damaged and continues to be damaged by Dell's infringement of the '908 patent.

### COUNT FOUR: INFRINGEMENT OF THE '941 PATENT

78. Neo Wireless incorporates by reference the preceding paragraphs as if fully set forth herein.

79. As described above, Dell has infringed and continues to infringe the patents-in-suit by implementing certain cellular standards, including particular 3GPP standards, in its products.

80. Dell directly infringes the '941 patent because it has made, used, sold, offered to sell and/or imported its respective Accused Instrumentalities in the United States. For example, each of Dell's Accused Instrumentalities implements the portions of the 3GPP LTE standard specification that read on at least claim 13 the '941 patent. *See* Exhibit I.

81. Dell's Accused Instrumentalities meet at least one claim of the '941 patent.

82. Dell makes, uses, offers to sell, sells, and imports Dell's Accused Instrumentalities within the United States or into the United States without authority from Neo Wireless.

83. Dell therefore infringes the '941 patent under 35 U.S.C. § 271(a).

84. Dell indirectly infringes the '941 patent by inducing infringement by others, such as end-user customers, by, for example, encouraging its users to take advantage of LTE features within the United States and by implementing the standardized features in its cellular-capable devices.

85. Dell took the above actions intending to cause infringing acts by others.

86. Dell received actual notice of its infringement of the '941 patent at least as early as the date of service of Complaint. Therefore, Dell was or is now aware of the '941 patent or has willfully blinded itself as to the existence of the '941 patent and made, used, sold, offered to sell, imported and/or encouraged the making, using, selling, offering to sell, or importing of the Accused Products despite knowing of an objectively high likelihood that its actions constituted infringement of the '941 patent at all times relevant to this suit. Alternatively, Dell subjectively believed there was a high probability that others would infringe the '941 patent but took deliberate steps to avoid confirming that it was actively inducing infringement by others. Dell therefore infringes the '941 patent under 35 U.S.C. § 271(b).

87. Dell indirectly infringes the '941 patent by contributing to infringement by others, such as end-user customers by offering to sell and selling within the United States components (that is, Dell's Accused Instrumentalities) that constitute a material part of the inventions claimed in the '941 patent, and that are used to practice one or more processes/methods covered by the claims of the '941 patent. Dell's end-user customers directly infringe the '941 patent by, for example, using the cellular functionality of Dell's Accused Instrumentalities, including establishing communication with the cellular wireless network and contending for access to resources on the network.

88. In offering to sell and selling the components specified above, Dell has known these components to be especially made or especially adapted for use in an infringement of the '941 patent and that these components are not a staple article or commodity of commerce suitable for substantial non-infringing use. Alternatively, Dell subjectively believed there was a high probability that these components to be especially made or especially adapted for use in an infringement of the '941 patent and that these

components are not a staple article or commodity of commerce suitable for substantial non-infringing use, but took deliberate steps to avoid confirming the same. Dell therefore infringes the '941 patent under 35 U.S.C. § 271(c).

89. To the extent that Dell releases any new version of Dell's Accused Instrumentalities, such instrumentalities will meet the claims of the '941 patent and infringe under 35 U.S.C. § 271(a)-(c) in ways analogous to Dell's current infringement described above.

90. Neo Wireless has been damaged and continues to be damaged by Dell's infringement of the 941 patent.

## COUNT FIVE: INFRINGEMENT OF THE '450 PATENT

91. Neo Wireless incorporates by reference the preceding paragraphs as if fully set forth herein.

92. As described above, Dell has infringed and continues to infringe the patents-in-suit by implementing certain cellular standards, including particular 3GPP standards, in its products.

93. Dell directly infringes the '450 patent because it has made, used, sold, offered to sell and/or imported its respective Accused Instrumentalities in the United States. For example, each of Dell's Accused Instrumentalities implements the portions of the 3GPP LTE standard specification that read on at least claim 7 the '450 patent. *See* Exhibit J.

94. Dell's Accused Instrumentalities meet at least one claim of the '450 patent.

95. Dell makes, uses, offers to sell, sells, and imports Dell's Accused Instrumentalities within the United States or into the United States without authority from Neo Wireless.

96. Dell therefore infringes the '450 patent under 35 U.S.C. § 271(a).

97. Dell indirectly infringes the '450 patent by inducing infringement by others, such as end-user customers, by, for example, encouraging its users to take advantage of LTE features within the United States and by implementing the standardized features in its cellular-capable devices.

98. Dell took the above actions intending to cause infringing acts by others.

99. Dell received actual notice of its infringement of the '450 patent at least as early as the date of service of Complaint. Therefore, Dell was or is now aware of the '450 patent or has willfully blinded itself as to the existence of the '450 patent and made, used, sold, offered to sell, imported and/or encouraged the making, using, selling, offering to sell, or importing of the Accused Products despite knowing of an objectively high likelihood that its actions constituted infringement of the '450 patent at all times relevant to this suit. Alternatively, Dell subjectively believed there was a high probability that others would infringe the '450 patent but took deliberate steps to avoid confirming that it was actively inducing infringement by others. Dell therefore infringes the '450 patent under 35 U.S.C. § 271(b).

100. Dell indirectly infringes the '450 patent by contributing to infringement by others, such as end-user customers by offering to sell and selling within the United States components (that is, Dell's Accused Instrumentalities) that constitute a material part of the inventions claimed in the '450 patent, and that are used to practice one or more processes/methods covered by the claims of the '450 patent. Dell's end-user customers directly infringe the '450 patent by, for example, using the cellular functionality of Dell's Accused Instrumentalities, including establishing communication with the cellular wireless network and contending for access to resources on the network.

101. In offering to sell and selling the components specified above, Dell has known these components to be especially made or especially adapted for use in an

infringement of the '450 patent and that these components are not a staple article or commodity of commerce suitable for substantial non-infringing use. Alternatively, Dell subjectively believed there was a high probability that these components to be especially made or especially adapted for use in an infringement of the '450 patent and that these components are not a staple article or commodity of commerce suitable for substantial non-infringing use but took deliberate steps to avoid confirming the same. Dell therefore infringes the '450 patent under 35 U.S.C. § 271(c).

102. To the extent that Dell releases any new version of Dell's Accused Instrumentalities, such instrumentalities will meet the claims of the '450 patent and infringe under 35 U.S.C. § 271(a)-(c) in ways analogous to Dell's current infringement described above.

103. Neo Wireless has been damaged and continues to be damaged by Dell's infringement of the 450 patent.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE Plaintiff Neo Wireless LLC asks this Court for an order granting the following relief:

    a. a judgment in favor of Plaintiff that Dell has infringed, either literally and/or under the doctrine of equivalents, the patents-in-suit;

    b. a judgment and order requiring Dell to pay Plaintiff its damages, costs, expenses, and any enhanced damages to which Plaintiff is entitled for Dell's infringement;

c. a judgment and order requiring Dell to provide an accounting and to pay supplemental damages to Plaintiff, including without limitation, pre-judgment and post-judgment interest;

d. a judgment and order requiring Dell to pay ongoing royalties;

e. a judgment and order finding that this is an exceptional case within the meaning of 35 U.S.C. § 285 and awarding Plaintiff its reasonable attorney fees against Dell; and

f. any and all other relief as the Court may deem appropriate and just under the circumstances.

DATED: January 12, 2021                    Respectfully submitted,

*/s/ Jason D. Cassady*
Jason D. Cassady
Texas State Bar No.
Email: jcassady@caldwellcc.com
**CALDWELL CASSADY CURRY P.C.**
2121 N. Pearl St., Suite 1200
Dallas, Texas 75201
Telephone: (214) 888-4848
Facsimile: (214) 888-4849

T. John Ward, Jr.
Texas Bar No. 00794818
jw@wsfirm.com
WARD, SMITH & HILL, PLLC
1507 Bill Owens Parkway
Longview, TX  75604
903-757-6400
903-757-2323 (Facsimile)

*Attorneys for Plaintiff Neo Wireless LLC*